UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KENT DOWDY and | § | |
| LETICIA WILSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-09-13 |
| | § | |
| COLLEGE OF THE MAINLAND, *et al*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM AND ORDER

### I.   INTRODUCTION

Before the Court are the defendants, College of the Mainland, ("College"), Lisa Templer and James Larry Durrence's motion for summary judgment and attendant memorandum (Document No. 38). Also before the Court is the plaintiffs' consolidated response, (Document No. 45). The Court has reviewed the pleadings on file, the motion and response, and the various attachments in support of the parties' respective positions and determine that the defendants' motion for summary judgment should be granted.

### II.   FACTUAL BACKGROUND

The plaintiffs brought separate lawsuits against, by and large, the same defendants, based on essentially the same claims that arise out of the same nucleus of facts event.[1] At the time of the event that gave rise to this suit, the plaintiffs were employed in the College's police department. Dowdy was employed as a police officer with the department and had served in that capacity for 10 years until he was terminated on August 1, 2008. Wilson served in various

---

[1] Kent Dowdy commenced his suit on July 31, 2009, in the Houston Division of the Court. Earlier, on January 1, 2009, Leticia Wilson commenced her suit in the Galveston Division of the Court. The Court consolidated the two suits on March 9, 2011, in the interest of judicial economy.

capacities in the police department but never as a police officer. At the time of the events related in this case, she was employed in the business office of the department as the head cashier.

On or about July 16, 2008, police officer, Sylvia Chapa, recorded a conversation between the plaintiffs and herself that, in part, concerned threats against an employee in Human Resources ("HR"), Jennifer Johnson. In the recorded conversation, Dowdy is heard to threaten the welfare and safety of Johnson. The recorded conversation was lengthy and the threatening remarks extended over a substantial portion of the recording that included Dowdy's comments concerning: (a) hiring someone to drive by and pointing a pistol at her [Johnson]; (b) paying someone to go to her office and "barf" on her; (c) hiring someone to "pop" her; (d) hiring someone to "follow and run her off the road"; and, (e) putting "some dynamite under her [Johnson's] car." Officer Chapa was concerned about the tone and tenor of Dowdy's remarks, and as a result turned the recording over to the Chief of Police and the Vice President for College and Financial Services, Lisa Templer.

As a result of the recording and the nature of the comments, both plaintiffs were placed on paid administrative leave on July 18, pending an investigation. After the recording was transcribed, the Chief of Police, certain administrators, and/or Templer, met with Dowdy and his attorney. A transcript of the recording was provided to Dowdy at the time and he was invited to make a written response, which he did on July 31.

On July 30, Templer met with Wilson and her representative concerning her role and/or participation in the recorded conversation. At the time, she was provided a transcript of the recording and invited to provide a written response, which she did on August 6. Both Dowdy and Wilson described the remarks as simply criticisms of certain employees in H.R. Dowdy specifically stated that he was "blowing off steam and experiencing frustration with HR's

2

mishandling of a number of issues." In responding to comments about the tone and tenor of his remarks, he stated that he would not characterize his comments as threats and that it was not his intent to cause harm to Johnson. According to Dowdy, his comments were intended as jokes. Wilson also described Dowdy's conduct and comments as merely "venting" and not constituting threats to Johnson or anyone else. She remarked that had she perceived his comments as threats, she "would have informed responsible officials."

On July 31, Templer completed her investigation in the matter concerning Dowdy. She concluded that Dowdy's comments did, in fact, threaten the safety of other employees, particularly Johnson. She informed Dowdy that his conduct was unacceptable, volative of College policy, and that she was recommending that he be terminated. The following day, the Interim President, James Larry Durrence, informed Dowdy that he was terminated effective August 1, and informed him further concerning the "due process procedures governing the termination process."

With regard to Wilson, Durrence cautioned her that Dowdy's comments were threatening and that she had acted disrespectfully to "the employees who were threatened by Dowdy." Moreover, he found her response inappropriate in that she did not object "to the tone of the conversation." He further found that her conduct violated the College policy, Policy DH (Local) which states:

> All College District personnel shall recognize and respect the rights of students, other employees, and members of the community and shall work cooperatively with others to serve the best interest of the College District….

No further action was taken against Wilson and she was removed from precautionary administrative leave and permitted to return to her regular duties.

3

During or near the end of the Dowdy investigation, a bank deposit, over which Wilson had verification authority, was determined to be short by $2,000. Wilson and others who handled deposits were questioned. On August 8, a memorandum was issued informing the police department that Wilson was not to be permitted in the business office alone on weekends. Several months later, Wilson was relieved of her duties as lead cashier and reassigned to a position in the admissions office. She contends in her suit that the defendants violated her First Amendment rights in that she, like Dowdy, was the subject of retaliation. She suggests that her reassignment to her current position is evidence of that retaliation. The Court consolidated their suits.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v.*

*Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."* *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## IV.  DISCUSSION AND ANALYSIS

Both plaintiffs sued the defendants for First Amendment retaliation asserting violation of their right to free speech. However, Dowdy also claims that his procedural and substantive "due process" rights were violated. Separately, Wilson alleged that her right of freedom of association was violated.[2]

### A)  Dowdy's Procedural and Substantive Due Process Claims

#### (1)  Procedural Due Process

In order for Dowdy to establish a procedural due process violation based on a right to notice of a complaint and an opportunity to be heard, he must establish each of the following essential elements; (a) he was discharged; (b) stigmatizing charges were made against him in connection with the discharge; (c) the charges were false; (d) he was not provided notice or an opportunity to be heard prior to the discharge; (e) the charges were made public; (f) he requested

---

[2] The plaintiff, Leticia Wilson, amended her pleading on October 30, 2009, deleting her freedom of association claim. Her sole claim for relief concerns her claim for Fist Amendment retaliation.

a hearing to clear his name; and (g) the employer denied the request. *See Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th cir. 2006); *see also*, *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000).

Dowdy, asserts in his pleadings that the College failed and refused to provide him with a copy of a complaint with respect to any accusation. He asserts that this failure violates the College's policy thereby preventing him from clearing his name. By this argument, he appears to suggest that Johnson made no written complaint against him and none was prepared by the College. The Court is of the opinion that the plaintiff's claim elevates form over substance and, therefore is unmeritorious.

The record reflects that the plaintiff received a letter for HR informing him that he was being placed on administrative leave with pay pending an investigation into his conduct. Later, on July 29, at a scheduled meeting, the plaintiff was provided a copy of the tape transcription. The record also shows that the plaintiff responded to HR's letter and the transcript on July 31. After termination, the plaintiff was granted a hearing before the Board of Trustees on September 10 and December 15, as part of his appeal of his termination. What is absent from Dowdy's proffer is any complaint that more time was needed to respond, or that he was unclear about the nature of the charges. Procedural due process is satisfied when the charged party receives oral or written notice of the infraction and is given a hearing and sufficient time and an opportunity to respond. *See Macklin v. City of New Orleans*, 293 F.3d 237, 241 (5th Cir. 2002).

On this record, the plaintiff has failed to establish that the charges were false, that he was not provided appropriate notice and an opportunity to be heard before he was discharged. *Bledsoe* 449 F.3d at 653; *Hughes*, 204 F.3d at 226. Therefore, the plaintiff has failed to establish

each of the elements necessary for a procedural due process claim and summary judgment is appropriate.

### (2) Substantive Due Process

Next, Dowdy asserts a substantive due process violation. He admits that in order to avoid summary judgment on this claim, he must present evidence that: (a) he had a property interest in his employment; and (b) the manner of his termination constituted an arbitrary and capricious act on the part of the College. *See Bolton v. City of* Dallas, 472 F.3d 261, 263 (5th Cir. 2006). In Texas, employment is at-will employment unless there is a contractual arrangement between the employer and the employee that lifts the relationship beyond the common law. *See Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). Termination of an at-will employee does need to meet the arbitrary and capricious standard. In the at-will employment setting, the employer is required only to exercise professional judgment in a manner that does not violate state or federal law. *See Id.* at 230. The evidence before the Court fails to reflect a contractual relation between the plaintiff and the College; hence, no property right or interest in employment arises and none is established. Summary judgment is, therefore, appropriate on Dowdy's substantive due process claim.

### B)   Dowdy and Wilson's Fist Amendment Retaliation Claims

Both plaintiffs assert a claim based on First Amendment retaliation. They claim that the recorded conversation was an exercise of free speech by a public employee addressing a matter of public concern. Specifically, they claim, the matter of public concern centered on whether the College was overpaying its police officers by paying them "hazardous duty pay." According to Dowdy, a meeting between various officials of the College and police officers was held where the discussion focused on whether the College was handling hazardous duty pay appropriately.

Dowdy claims that Templer admitted during the meeting that police officers were, in fact, being overpaid. She stated, according to Dowdy, that the College would continue to pay the money, ostensibly, to the end of the budgetary cycle that ended August 31, 2008. According to Dowdy, she then instructed the officers to be quiet about it. The plaintiff admits that he did not talk with anyone other than his colleagues about the matter. Specifically, he did not talk with Templer, anyone in administration, or make a public forum statement about his concerns.

The evidence also shows that Wilson was not a police officer and did not receive hazardous duty pay. She was not invited to the meeting where Templer made the alleged admission(s). As well, there is no evidence that Wilson brought the matter to the attention of anyone in administration, other than Templer, and then at a time when she presented the calculations for hazardous duty pay for approval. Nevertheless, it is Wilson's contention also that police officers were being overpaid and that she was sanctioned because of her position on the matter.

In order to establish a claim for First Amendment retaliation, a plaintiff must show that: (a) he engaged in constitutionally protected speech on a matter of public concern; (b) his interest in speaking on the public concern outweighed his employer's interest in promoting efficiency in the workplace; (c) an adverse employment action was taken against him; and, (d) his speech was a motivating factor in the adverse employment decision. *See Beattie v. Madison County School Dist.*, 254 F.3d 595, 603 (5th Cir. 2001).

Public employees are not denied First Amendment protection when they speak out on a matter of public concern simply because they are public employees. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006). They are permitted to speak on issues that affect their employment so long as they are matters of public concern. *Id.* at 417. In determining whether the speech is of public

concern, a court must examine the "content, form, and context" of the speech as revealed in the record. *See Snyder v. Phelps*, 131 S. Ct. 1207, 2011 U.S. LEXIS 1903 (2011). However, speech that is made pursuant to a public employee's official responsibilities does not receive First Amendment protection. *See Garcetti*, 547 U.S. at 419.

In the case at bar, Dowdy has failed to establish that his speech concerning the hazardous duty pay was a motivating factor in his termination. *See Beattie*, 254 F.3d at 603. The record is clear that a College official, Templer, was aware of the plaintiff's, and perhaps others', concerns about receiving hazardous duty pay. It was Dowdy's concern that he would be required to return the pay later after spending it. Nevertheless, because it had been budgeted, in Templer's judgment, the pay would continue for the next two (2) months or until a new budget was in place. Hence, the matter was addressed by a College administrator.

Dowdy's threats about Jennifer Johnson, who worked in HR, were unrelated to any public position that he had voiced. The record shows that during this same time, Johnson filed a sexual harassment complaint against Dowdy, which complaint triggered an HR investigation. This complaint also figured into the tension between Dowdy and Johnson. Nevertheless, even if the hazardous duty pay issue was a matter of public concern, Johnson's involvement was at a lower level than Templer and arose out of her duties in HR. She had no authority to change the manner in which police officers were paid. The record is clear, Dowdy's expressed desire to cause physical harm to Johnson was unrelated to her duties.

Moreover, there is no evidence that Dowdy spoke or sought to speak at a public forum about his concerns and was prevented from doing so. Moreso, he was not terminated for any statement that he made about being overpaid. Instead, it was the threats that he lodged against Johnson that triggered the investigation and subsequent termination. Considering the content,

9

form and context, the Court determines that the plaintiff's comments were words of hate, not debate, and that were not intended for public consumption because they were made in a private setting.

Wilson, has no justiciable First Amendment claim at all. She admits that she spoke to Templer about the hazardous pay issue but does not claim that she ever made or attempted to make a public statement. And, there is no evidence of a reprimand or sanctions concerning her remarks to Templer. She suffered no adverse employment action and her official responsibilities concerning various accounting functions do not give rise to a First Amendment right. The fact that Wilson was barred from the business office on weekends because of missing proceeds, except in the presence of another employee, speaks only to the College's concern about how she handled or mishandled a deposit of funds. The memorandum was totally unrelated to the hazardous duty pay issue and no evidence is presented to the contrary. Therefore, Wilson has no claim and admits as much in her deposition.

The Court concludes that the defendant's motion for summary judgment should be, and it is, hereby GRANTED.

SIGNED at Houston, Texas this 28th day of July, 2011.

_____
Kenneth M. Hoyt
United States District Judge